UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                              )
                                    )
    AVA MAUREEN SAWYER          )    Case No. 07-10252-SSM
                                    )    Chapter 13
               Debtor         )

**MEMORANDUM OPINION AND ORDER**

      Before the court are (a) the objections of Gerald M. O'Donnell, chapter 13 trustee, and Dean S. Worcester, a secured creditor, to confirmation of the plan filed by the debtor on February 28, 2007; and (b) the motions of the same two parties to dismiss this case with prejudice. A hearing was held on April 11, 2007. The debtor was present in person and represented herself. The chapter 13 trustee was present in person, and Worcester was present by counsel. Subsequent to the hearing, the debtor and Worcester have each filed memoranda further addressing the issues.[1] For the reasons stated, the court will grant the motions to dismiss, although not with prejudice, thereby mooting the objections to confirmation.

Background

      Ava Maureen Sawyer ("the debtor") filed a voluntary petition in this court on February 1, 2007, for adjustment of her debts under chapter 13 of the Bankruptcy Code. The petition, according to the debtor, was filed in response to a scheduled state court hearing

---

[1] The debtor and Worcester have each filed objections to the post-hearing submissions of the other. Those objections are overruled.

1

to approve a sale of her home in a judgment creditor's suit brought by Dean S. Worcester to enforce a money judgment entered in his favor in August 1994 by the Circuit Court of Frederick County, Virginia—a judgment that the debtor vigorously maintains was void *ab initio*.

This was the debtor's second chapter 13 filing in this court. The previous case, No. 04-39378-DOT, was filed in the Richmond Division on October 7, 2004. The debtor filed four plans in that case, none of which was confirmed. By memorandum opinion and order of June 9, 2005, Chief Judge Tice dismissed the case on the grounds that it had been filed in bad faith and that the debtor was guilty of unreasonable delay. After the debtor's motion for reconsideration of the dismissal order was denied, she took an appeal to the United States District Court for the Eastern District of Virginia. The District Court affirmed the dismissal order by memorandum opinion and order of November 22, 2005. The debtor sought reconsideration, which was denied by order of December 9, 2005. The debtor then appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed the District Court on August 23, 2006. The present case was filed five months later.

The debtor's primary asset is a townhouse in Reston, Virginia, that she values at $400,000. There are no mortgages against the property, but it is subject to a judgment lien in favor of the estate of Preston Conner, Sr., in the amount of $32,000; a judgment lien in favor of Worcester in the amount of $135,000; and a statutory lien in favor of the Fairfax County Water Authority in the amount of $800.[2] All three liens are listed as disputed. The

---

[2] These figures are taken from the schedules, where they are listed as disputed. Worcester has filed a proof of claim in the amount of $133,547.83, while the executor of Conner's
(continued...)

schedules report priority debts in favor of the Internal Revenue Service and the Virginia Department of Taxation in the total amount of $19,000, and four unsecured claims in the amount of $17,581.  The schedules further reflect that the debtor has net monthly income of $3,047 and monthly expenses of $2,215.

On February 28, 2007, the debtor filed the proposed repayment plan that is before the court.  Under the plan, she would pay the chapter 13 trustee $800 per month for 60 months, although the plan also states, "[A]ll allowed claims to be paid within 4 months of approval."[3]  With respect to the three liens against her property, the plan states that the debtor will file pleadings to avoid them.[4]  Except for the amount of the monthly payment to the trustee, the present plan does not differ in any significant way from the four plans she filed in her first chapter 13 case, all of which contemplated or were predicated on avoidance of the Worcester and Conner liens.[5]

---

[2](...continued)
estate has filed a proof of claim in the amount of $38,362.14.

[3]  Subsequent to the confirmation hearing, the debtor filed a pleading (Doc. # 44) on April 26, 2007, amplifying her plan to state that if the expected claims by Conner and Worcester were ultimately upheld, she would, within three months of a final ruling, either refinance or sell the Reston property to pay the claims.

[4]  At the hearing, the debtor suggested that she might merely object to the claims and rely on a favorable ruling as a subsequent basis for avoidance.

[5]  The first plan, filed on January 5, 2005, required payments of $3,000 per month until "the full amount actually owed to everyone" was paid.  The second plan, filed on February 2, 2005, required payments of $300.00 per month for 36 months.  The third plan, filed on February 15, 2005, likewise required $300.00 per month for 36 months but also stated that if the court were to allow the disputed claims or liens of Worcester or the Conner Estate, she would sell her home "or *possibly* take out a mortgage thereon sufficient to pay any such allowed claim(s) . . . and pay off such any allowed claim(s) with the proceeds of such sale/refinancing." (emphasis in original).  The fourth plan, filed on April 4, 2005, required
(continued...)

In order to place the present controversy in context, it is necessary to briefly discuss the debtor's dispute with Conner and Worcester. The events are set forth in some detail in Judge Tice's memorandum decision of June 9, 2005, in Judge Hudson's memorandum opinion of November 22, 2005, and in the order and opinion of the Virginia State Bar Disciplinary Board of November 16, 1999, *reported at* Virginia Lawyer Register, January 2000, at 9. For that reason, the circumstances will be repeated here only to the extent necessary to provide a background for the present ruling. In any event, the debtor, then a practicing attorney, agreed to represent Preston E. Conner, Sr., in a suit to rescind a sale of 82 acres of real estate. At some point, Worcester was associated as co-counsel, and a written fee agreement, which included a contingent fee component, was signed by Conner, Worcester, and the debtor. The case was settled before trial, with Conner receiving cash plus a reconveyance of a portion of the land. According to the debtor, Worcester had by this time withdrawn from representing Conner, although no order had been entered to that effect. A dispute arose between Conner and the debtor concerning the contingent fee as it related to the property that was returned to Conner. After the debtor refused to turn over the remaining portion of the settlement proceeds that she was holding, Conner filed suit against the debtor and Worcester in the Circuit Court of Frederick County, Virginia. After a trial, that court entered a final decree on August 26, 1994, directing the debtor to pay Conner $117,085.94, with interest at 8% from July 29, 1992, and to pay Worcester $62,000. The

---

[5](...continued)
payments of $2,500 per month for 60 months.

4

debtor paid the Clerk of the Frederick County Circuit Court $117,795.36 on account of the Conner judgment.[6] No payment has been made on account of the Worcester judgment.

Although the debtor did not take an appeal from the final decree, she has doggedly urged in subsequent proceedings that the Conner and Worcester judgments were void *ab initio*.[7] Indeed, one of her grounds of appeal to the Supreme Court of Virginia from the 1999 order of the Virginia State Bar Disciplinary Board revoking her license to practice law (which had been based in part on her failure to appear before the Frederick County Circuit Court in proceedings to enforce the judgment) was that the decree was void *ab initio*. She took the same position before Judge Tice in her prior chapter 13 case and submitted a 61-page memorandum in support of that assertion. In his opinion, Judge Tice held:

> [D]ebtor misconceives the purpose and limitations of chapter 13. She filed bankruptcy solely for an improper purpose, the resolution of a state law dispute between debtor and two judgment lien creditors. Those judgments were rendered in 1994. In the papers filed in this case, over ten years later, debtor has failed to persuade the court, either on the merits or otherwise, that

---

[6] Because of interest, the amount paid by the debtor was less than the amount then due on the judgment. For the purpose of the present ruling, it is not necessary to fix the exact amount of the shortfall.

[7] The debtor's arguments are set forth at length in a 65-page memorandum of law she filed in the Frederick County Circuit Court challenging the judgment and in a 16-page "statement" that she filed with the United States District Court in connection with the appeal of Chief Judge Tice's ruling. (The pleadings in question are filed as exhibits to Doc. # 34 and Doc. # 41 in this case.) The debtor states in her post-hearing memorandum that she unsuccessfully sought a writ of prohibition from the Supreme Court of Virginia. At oral argument, she also stated—and the electronically-available public docket entries confirm—that she brought a civil rights action in the United States District Court for the Eastern District of Virginia challenging the judgment under 42 U.S.C. § 1983. *Sawyer v. Cir. Ct. of Fairfax Co., Va.*, No. 1:03-cv-00258-GBL. The dismissal of that action in June 2003 was affirmed by the United States Court of Appeals for the Fourth Circuit in February 2004. The Supreme Court of the United States denied the debtor's petition for a writ of certiorari.

> this dispute should be considered in the context of a bankruptcy case. If the judgments are void, she should attack them in state court.

*In re Sawyer*, No. 04-39378-DOT (Bankr. E.D. Va., June 9, 2005) at 11-12 (emphasis in original; footnote and internal citation omitted). Although Judge Tice was not required to make a formal ruling as to the validity of the judgments, he noted that he had considered the debtor's arguments and determined that there was little likelihood that she would succeed on her claim:

> Assuming for the sake of argument that the Frederick County Circuit Court committed error in rendering judgment against debtor, the issue is whether the judgments are void or voidable. If merely voidable, they are not subject to collateral attack. The general rule is that where a court has jurisdiction over the person and the subject matter, no error in the exercise of such jurisdiction can make the judgment void and a judgment rendered by [a] court of competent jurisdiction is not void merely because of irregularities or errors of law in connection therewith. . . . It appears likely that Frederick County Circuit Court, sitting in equity, had jurisdiction over the attorney fee issues before it and the defendants. The court may have committed reversible error, but that is not a question to be decided by this court.

*Id*. at 12-13 (internal quotation and citation omitted). Judge Tice held, finally, that "[b]ecause this court will not confirm a chapter 13 plan premised on collateral attack of the judgment creditors' claims," and because the case had been pending approximately eight months without a confirmable plan having been filed, and because the debtor had failed to timely commence plan payments, the case would be dismissed. *Id.* at 13. That ruling, as noted, was affirmed on appeal by the United States District Court and by the Fourth Circuit Court of Appeals.

Discussion

The trustee and Worcester join in urging a number of grounds as a reason for dismissing the debtor's case. Specifically, they assert that the debtor failed to appear at the scheduled meeting of creditors, failed to commence plan payments, failed to file required tax returns, and did not file the present case in good faith. These issues will be briefly addressed in turn.

A. Failure to Appear at the Meeting of Creditors

The meeting of creditors under § 341 of the Bankruptcy Code was scheduled for March 6, 2007. When the United States Trustee certified that the debtor failed to appear for the hearing, the court issued a notice for the debtor to show cause why her case should not be dismissed with prejudice or converted to chapter 7. After hearing the debtor's explanation, the court concluded that the failure was the result of excusable neglect and rescheduled the meeting of creditors for April 24, 2007. So far as appears from the docket of the case, the debtor appeared at the rescheduled meeting. Accordingly, the failure to appear for examination at the originally-scheduled date provides no basis for now dismissing the case.

B. Failure to Make First Plan Payment

The trustee also asserts that the debtor failed to make the first plan payment within 30 days of the filing of the petition, as required by § 1326(a)(1), Bankruptcy Code. Since the petition commencing the debtor's case was filed on February 1, 2007, her first plan payment

was due March 5, 2007.[8] The trustee represented at the hearing that he had not received *any* payments from the debtor.[9] The debtor, for her part, represented that on the afternoon of March 1, 2007 (after first mistakenly going to the Office of the United States Trustee) she went to the trustee's office to deliver the first payment, but that the door was locked, and no one answered her knock, so she placed a check in an envelope and slipped it under the door. She acknowledges in her post-hearing memorandum that the check has not cleared, and she states that she has mailed a replacement check to the trustee. She does not address the status of the payments that would have become due subsequent to March 5th. For his part, the trustee has provided no update since the hearing as to the status of the plan payments. Without receiving further evidence, the court is unable to resolve the factual dispute. Given that the case must be dismissed on other grounds, there would be no point in holding a further hearing, although the court notes that its practice has been to give debtors who miss their first payment or fall behind in plan payments at least some brief opportunity to bring themselves current before dismissing the case.

## C. Failure to File Tax Returns

A chapter 13 debtor is required, no later than "the *day before* the date on which the meeting of creditors is *first scheduled* to be held," to "file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition." § 1308(a), Bankruptcy Code (emphasis added). Failure to comply

---

[8] The literal 30th day would have been March 3rd. But since that day was a Saturday, the time was extended to the following Monday. Fed. R. Bankr. P. 9006(a).

[9] By the date of the hearing, a second payment would have fallen due.

with this requirement—which was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005—is grounds for dismissal or conversion of the case.  § 1307(e), Bankruptcy Code.  Additionally, compliance is a condition of confirmation.  § 1325(a)(9), Bankruptcy Code.  The trustee may extend the time for compliance for up to 120 days for returns that were due before the petition was filed or, for returns becoming due after the filing of the petition, to the later of 120 days after the meeting of creditors or the last day for filing under the last automatic extension to which the debtor is entitled.  § 1308(b)(1), Bankruptcy Code.  The court may extend the time for an additional 30 days beyond whatever extension is granted by the trustee, but only if the failure to comply "is attributable to circumstances beyond the control of the debtor."  § 1308(b)(2), Bankruptcy Code.

      The debtor does not dispute that she did not file Federal and Virginia income tax returns for 2003, 2004, 2005, and 2006 by March 5, 2007, the day before the first date set for the meeting of creditors.  Indeed, her failure to have filed <u>any</u> returns since 1999 precipitated objections to confirmation by the Internal Revenue Service and the Virginia Department of Taxation.  In response to that objection, she prepared Federal income tax returns for 2000, 2001, 2002, 2003, and 2004 and delivered them to the attorney for the United States prior to the hearing on April 11, 2007.  The two taxing authorities were agreeable to giving the debtor an additional four weeks to prepare and submit the remaining returns, and the court continued their objections to May 9, 2007, and subsequently to June 13, 2007.

The fact that the tax authorities have agreed to a continuance of their objections to confirmation does not, however, resolve the motions to dismiss. Failure to file the returns required by § 1308 is a ground for dismissal as well as a ground for denying confirmation. Indeed, as the statute is phrased, the court is *required to* ("shall") dismiss or convert the case, whichever is in the best interest of the creditors and the estate, if the debtor fails to file the returns required by § 1308 *and* dismissal is requested by a party in interest. Unless the trustee has granted an extension of the time, the court's only discretion is to grant a 30-day extension for returns that were due before the filing of the petition and an extension through the last date for which an automatic extension was available for returns due after the filing of the petition. And even this the court may do only if the court determines that the debtor's failure to file "is attributable to circumstances beyond the control of the debtor." The debtor's only explanation for the failure to file the returns on time is that she has been "consumed" by the litigation she has been involved in for the last several years challenging the Worcester judgment and her disbarment. The court is unable to find that such litigation would leave no time for the preparation of tax returns or is a circumstance beyond the control of the debtor. Accordingly, the court can find no sufficient basis for granting a further extension. Since no extension has been granted by the trustee, and because the trustee has requested dismissal based on the failure to file the tax returns by the date specified, the statute requires either dismissal of the case or conversion to chapter 7, whichever is in the best interest of creditors. Creditors would benefit from conversion to chapter 7 rather than dismissal if the chapter 7 trustee were to sell the debtor's property for an amount in excess of the liens of record, as the surplus would then be

available to pay the claims of unsecured creditors. But since the chapter 13 trustee and Worcester are the only parties seeking dismissal or conversion based on the failure to file the tax returns, and since both favor dismissal, the court concludes that dismissal rather than conversion is in the best interest of creditors.

### D.  Lack of Good Faith

A chapter 13 case may be dismissed on motion of a party in interest for "cause," which includes a lack of good faith. § 1307(c), Bankruptcy Code; *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992). A lack of good faith, either in the filing of the case or in proposing a plan, is likewise a basis for denying confirmation of a plan. § 1325(a)(3) and (7), Bankruptcy Code. In this circuit, a dismissal for bad faith at the outset of a reorganization case requires a showing of both subjective bad faith on the part of the debtor and objective futility of any possible reorganization. *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989). The Bankruptcy Code contains no definition of good faith, and the inquiry is necessarily fact-specific. With respect to the filing of a petition, one court has said:

> Keeping in mind that the focus of the inquiry is fundamental fairness, the following nonexhaustive list exemplifies some of the factors that are relevant when determining if a Chapter 13 petition was filed in good faith: the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Love,* 957 F.2d at 1357. With respect to plan confirmation, the Fourth Circuit has adopted a totality-of-the-circumstances test and has identified a number of non-exclusive factors to be considered:

11

> [T]he percentage of proposed repayment, . . . the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor.

*Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982).

The motions to dismiss and the debtor's response raise three related issues. The first is whether the present case was filed primarily for the purpose of collaterally attacking the Conner and Worcester judgments. The second is whether Judge Tice's prior ruling that such a purpose constitutes an improper use of chapter 13 is binding in the present case. And the third is whether the filing of a successive chapter 13 case after dismissal of a prior case when there has been no meaningful change of circumstances itself constitutes bad faith warranting dismissal.

1.

That the debtor filed the present case solely or largely for the purpose of mounting a collateral attack on the Conner and Worcester judgments is clear. First, her plan, as filed, is predicated, and indeed dependent, on wiping out those claims, since the $800.00 per month payments she proposes to make are insufficient to pay them over the 60-month term of the plan. Second, her response to the motion to dismiss plainly sets forth her belief that she has not received justice in the Virginia courts, in the United States District Court, or from Judge Tice, and that she views this court as

> the *one and only remaining forum* in which [she] may be heard upon *her objections to the two largest claims* she expects to be filed against her, and the only one in which she has any opportunity left to vindicate herself so that she may hereafter have some basis upon which to re-apply to have her license to practice law reinstated.

Debtor's Response to the Trustee's Motion to Dismiss at 11 (emphasis added).

2.

As noted, Judge Tice held in the debtor's prior case that filing a chapter 13 case solely for the purpose of collaterally attacking a state court judgment was an improper use of chapter 13 and justified a finding of bad faith. The debtor argues that Judge Tice's ruling was wrong; that he lacked "authority" to make it; and that in any event the ruling has no preclusive effect in the present case. The court cannot agree.

The purpose of chapter 13 is to enable a financially-strapped debtor to restructure his or her debts and to repay creditors to the best of his or her ability under court protection and court supervision. It is of course true that in the course of administering a bankruptcy case, the court has the authority to determine the amount and validity of claims filed by creditors seeking to be paid. § 502(b), Bankruptcy Code; Fed. R. Bankr. P. 3007. In such instances, however, the adjudication of disputed claims is secondary to the goal of repaying creditors under a plan. Nothing in the history or structure of the Bankruptcy Code suggests that Congress ever intended the code as simply providing an alternative federal forum for the resolution of state law claims, let alone serving as a forum of last resort when a litigant had been unsuccessful in other courts.

This is not to say that a bankruptcy court is without power to reexamine a claim that has previously been adjudicated in state court; but the scope of that review is very narrow. *In re Wizard Software, Inc.,* 185 B.R. 512 (Bankr. E.D. Va. 1995). The records and judicial proceedings of state courts, when properly authenticated, "shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such State, Territory or Possession from which they are

taken." 28 U.S.C. § 1738.  Virginia law recognizes the general principle that "if a judgment is void, it may be assailed anywhere, at any time, in any way, by anybody.  It is immaterial whether the assault be direct or collateral.  It is a nullity and may be treated as such." *Beck v. Semones' Adm'r*, 145 Va. 429, 441, 134 S.E. 677, 680 (1926).   In addition, Virginia by statute explicitly preserves the historic right of a court of equity to entertain an independent action "to relieve a party from any judgment or proceeding, or to grant relief to a defendant not served with process . . ., or to set aside a judgment or decree for fraud upon the court."  § 8.01-428(D), Va. Code Ann.  The Virginia Supreme Court has held, however, that these remedial provisions "must be given a narrow construction because 'judicial proceedings must have a certainty of result, and a high degree of finality must attach to judgments.'" *Charles v. Precision Tune, Inc.*, 243 Va. 313, 317, 414 S.E.2d 831, 833 (1992) (internal citation omitted).   There can be no doubt that a bankruptcy court has the general powers of a court of equity when passing on objections to claims.  *Heiser v. Woodruff*, 327 U.S. 726, 732, 66 S. Ct. 853, 856, 90 L. Ed. 970 (1946) (stating that "a bankruptcy court is also a court of equity, ... and may exercise equity powers in bankruptcy proceedings to set aside fraudulent claims, including a fraudulent judgment where the issue of fraud has not been previously adjudicated." (internal citation omitted)).  Accordingly, the Supreme Court has held that a proof of claim based on a judgment

> may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud.

*Id.*, 327 U.S. at 736, 66 S. Ct. at 858.  However, the Supreme Court also cautioned:

> But it is quite another matter to say that the bankruptcy court may reexamine the issues determined by the judgment itself. It has, from an early date, been held to the contrary.

*Id.* In *Heiser*, the debtor, and subsequently the trustee, had unsuccessfully moved in the trial court to set aside a large default judgment against the debtor on the ground that it had been fraudulently procured. Accordingly, the Supreme Court held a further attack on the claim in the bankruptcy court on the ground that the judgment had been procured by fraud was barred by res judicata. *Id.* at 735-36, 66 S. Ct. at 857.

That said, the issue is not whether a bankruptcy court has the *power* to go behind a state court judgment when the state court, for example, lacked jurisdiction over the parties or the judgment was procured by fraud, but instead whether a bankruptcy filing made because the judgment debtor, having been rebuffed by other courts, views the bankruptcy court as "the one and only remaining forum" in which to challenge the judgment—not merely, it might be added, for the purpose of defeating the judgment creditor's right to payment, but also as a springboard to challenging her disbarment proceedings—is a proper purpose for filing a chapter 13 case. I fully agree with Judge Tice that it is not.

3.

But even if it could be argued that filing a chapter 13 case for the primary purpose of challenging a state court judgment against the debtor is not (at least in some circumstances) a misuse of the bankruptcy process, the fact remains that Judge Tice's holding to the contrary was upheld on appeal. Although the dismissal of the debtor's prior case was without formal prejudice to refiling,[10] courts have consistently held that serial or successive

---

[10] § 349(a), Bankruptcy Code, provides in pertinent part as follows:

(continued...)

bankruptcy filings, when there has been no change in circumstances since the prior filing, is evidence of bad faith justifying dismissal of the later case. *See, e.g., In re Earl*, 140 B.R. 728, 736-37 (Bankr. N.D. Ind. 1992) (collecting cases). Put another way, when a debtor has received an adverse ruling, and has been fully heard on appeal, she is not entitled to simply refile in the hope that another judge will see things differently. Although the debtor argues that there has been a change of circumstances because Worcester's state court suit to enforce his judgment lien had advanced to the point where a judicial sale was about to be approved for a price that the debtor contends is far below the value of her house, the fact that efforts to enforce a claim are closer to fruition since the prior case was dismissed does not represent changed circumstances of the type relevant in determining whether a second filing was made in good faith. The type of changed circumstances that are relevant to the good faith analysis have to do with the debtor's ability to formulate and perform a plan. In that respect, there has been no meaningful change. The creditors are the same. The debtor's employment situation has not improved. Most tellingly, the debtor's purpose for filing chapter 13 remains unchanged from her prior filing, as does her fall-back position—namely that if her challenges to the Worcester and Conner judgments do not succeed, she will then—but only then—either refinance or sell the house. Under these circumstances, the court has little difficulty in concluding that the present case, because it presents no changed circumstances from the prior failed case and simply seeks to reargue positions that were presented to and rejected by another judge of this court, has not been filed in bad faith. For that reason, as

---

[10](...continued)
Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

16

well as because the debtor failed to file her tax returns by the statutory deadline, the court will grant the motion of Worcester and the chapter 13 trustee to dismiss the case.[11]  Although Worcester requests that dismissal be with formal prejudice to any further bankruptcy filing, the court is not convinced that the debtor's conduct in filing the present case and her financial prospects for the future are such that future bankruptcy relief should be completely foreclosed.   Worcester is sufficiently protected, in the court's view, by the limitation on the automatic stay if a new case is filed within one year of the dismissal of this case.  § 362(c)(3)(A), Bankruptcy Code.

O R D E R

For the foregoing reasons, it is

**ORDERED:**

1.  The motions of Gerald M. O'Donnell and Dean S. Worcester to dismiss this case are granted, and this case is dismissed.

2.  The debtor is advised that an appeal lies from this order to the United States District Court for the Eastern District of Virginia.  Except as provided in Rules 8002(b) and (c), Federal Rules of Bankruptcy Procedure, any notice of appeal must be filed

---

[11] Dismissal moots the trustee's and Worcester's objections to confirmation.  It also moots a pending objection by Worcester to the debtor's claim of exemptions.  On her schedule of property claimed exempt (Schedule C), the debtor did not list any property.  Instead, under "Description of Property," she stated, "All property listed on my Homestead Deed dated March 19, 2003."  A copy of the homestead deed was not appended to the schedules.  The court agrees that a mere reference to a document that is not filed in the bankruptcy case itself does not satisfy the requirement of § 522(*l*) that the debtor file a "list" of the property that the debtor claims exempt.  Since no valid claim of exemption has been made, the court, if it were to reach the issue, would sustain Worcester's objection to the claim of exemptions, but without prejudice to the debtor's right to amend her schedules to list the specific property claimed exempt, the statutory basis for each objection, and the value of the property claimed exempt.

with the clerk of this court not later than <u>10 days</u> from the entry of this order. The filing fee for a notice of appeal is $255.00.

       3. The clerk will mail a copy of this order, or give electronic notice of its entry, to the parties listed below.

Date: _____           _____
                                                  Stephen S. Mitchell
Alexandria, Virginia                       United States Bankruptcy Judge

Copies to:

Ava Maureen Sawyer
11023 Barton Hill Court
Reston, VA 20191
Debtor *pro se*

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee

William H. Schwarzschild, III, Esquire
Williams Mullen
1021 East Cary Street
P.O. Box 1320
Richmond, Virginia 23218-1320
Counsel for Dean S. Worcester

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314